IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:20-cv-00070 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE *IN REM* |
| $14,000.00 IN U.S. CURRENCY, | ) | |
| APPROXIMATELY 66 FIREARMS, | ) | |
| AMMUNITION, AND ASSORTED | ) | |
| DRUG PARAPHERNALIA SEIZED | ) | |
| FROM 220 EAST LALLY STREET, | ) | |
| DES MOINES, IOWA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   NATURE OF THE ACTION

1.      This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2.      This is action is also to forfeit property to the United States, pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 924(d)(1).

3.      The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance in violation of subchapter I – Control and Enforcement, of  Chapter 13 – Drug Abuse Prevention and Control, and Title 21

— Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

4.     Some of the Defendant Property, namely the firearms and ammunition, are subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms and ammunition involved in or used in a knowing violation of 18 U.S.C. § 922(g)(3). Pursuant to 18 U.S.C. § 922(g)(3), it is a crime for any person who is an unlawful user of or addicted to any controlled substance, as defined in 21 U.S.C. § 802, to possess any firearms or ammunition that have been shipped or transported in interstate foreign commerce.

## II.     DEFENDANT *IN REM*

5.     The Defendant Property is generally described as $14,000, approximately 66 firearms, ammunition, and drug paraphernalia seized on August 29, 2017 from 220 East Lally Street in Des Moines, and more specifically described below.

## III.     JURISDICTION AND VENUE

6.     This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.     This Court has *in rem* jurisdiction and venue over the Defendant Property under 28 U.S.C. §§ 1355(b) and 1395(b) as the acts or omissions giving rise

to the forfeiture occurred in this district and because the Defendant Property was seized from and is located in this district.

8.     The government believes, based on available knowledge, information, and belief, that the following factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for investigation and discovery.

## IV.   FACTS

9.     The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

10.     The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

11.     Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision.  21 U.S.C. § 812(b)(1)(A)–(C).

12.     Under the Controlled Substances Act, only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances.  21 U.S.C. § 822(a), (b).

13.     Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

14.     Under the Controlled Substances Act, it is unlawful to knowingly possess a controlled substance, absent certain circumstances.  21 U.S.C. § 844(a).

15.     Under the Controlled Substances Act, methamphetamine is a Schedule II controlled substance.

16.     Under the Controlled Substances Act, marijuana is a Schedule I controlled substance.

17.     Under the Controlled Substances Act, diazepam is a Schedule IV controlled substance.

18.     Under the Controlled Substances Act, alprazolam is a Schedule IV controlled substance.

19.     At no time pertinent to the events involved in this case were Douglas Andrew Tinlin or Dawn Osborn authorized under federal law to individually or jointly possess, distribute, dispense, or possess with the intent to distribute or dispense, any controlled substance.

20.     On or about February 13, 1997, Douglas Andrew Tinlin was arrested in Polk County, Iowa for possession of a Schedule I controlled substance.  He pled guilty to this offense, and was sentenced on or about May 15, 1997 to 50 hours of community service.

4

21.     On or about April 20, 1997, Douglas Andrew Tinlin was arrested in Polk County, Iowa for possession of a Schedule II controlled substance, and illegally carrying a concealed weapon. He pled guilty to both crimes, and was sentenced on or about August 7, 1997 to 2 years' imprisonment, suspended.

22.     On or about March 29, 2007, Douglas Andrew Tinlin was arrested in Polk County, Iowa for possession of a controlled substance. He pled guilty, and was sentenced on or about August 6, 2007 to 2 years' imprisonment, suspended. His probation for this offense was revoked on or about September 17, 2007.

23.     On or about September 24, 2008, Douglas Andrew Tinlin was arrested at the Oakdale Iowa Medical and Classification Center (IMCC), part of the state prison system, for possession of a controlled substance, second offense. He pled guilty, and was sentenced to 2 years imprisonment.

24.     On or about August 29, 2017, as discussed more fully below, Douglas Andrew Tinlin was arrested in Sarpy County, Nebraska on felony charges of possession of 140 grams or more of methamphetamine. He pled guilty, and was sentenced on or about April 8, 2019 to 20 to 25 years imprisonment.

25.     On or about August 29, 2017, an Omaha, Nebraska law enforcement officer patrolling on Interstate 80 near mile marker 442 appropriately stopped an East-bound 2017 silver Cadillac XTS with Oregon license plates for following another vehicle at an unsafe and unreasonable distance, in violation of Nebraska law.

26.     The Nebraska law enforcement officer turned on the emergency lights to his patrol vehicle, and safely pulled the Cadillac over for this violation.

27.   The Cadillac had two adult occupants, the driver, Douglas Tinlin (hereinafter "Tinlin") and the passenger, Dawn Osborn (hereinafter "Osborn").

28.   Tinlin and Osborn both resided in Des Moines, Iowa at the time, and Tinlin had an Iowa driver's license, listing his address as 220 East Lally Street in Des Moines.

29.   The Nebraska law enforcement officer knew from his training and experience that smugglers of drugs and drug money often use rented, high-value vehicles, believing law enforcement will not suspect them of engaging in illegal activity if they drive expensive vehicles.

30.   During the lawful stop, the Nebraska law enforcement officer observed blankets on the back seat and a can of Red Bull energy drink in the cup holder.

31.   The Nebraska law enforcement office knew from his training and experience that couriers of drugs or drug money often use blankets and energy drinks to assist them in driving long hours when they are in a hurry to get to a destination as quickly as possible, thereby trying to avoid being detected by law enforcement.

32.   During the stop, the Nebraska law enforcement officer observed that both Tinlin and Osborn had sunken facial features and pock-marked skin.

33.   The Nebraska law enforcement officer knew from his training and experience that sunken facial features and pock-marked faces are characteristics consistent with methamphetamine use.

34.   During the stop, Tinlin told the Nebraska law enforcement officer that he and Osborn had flown to Las Vegas to see his uncle, who had broken his hip.

35.     Later during the stop, Osborn told the Nebraska law enforcement officer that she and Tinlin had travelled to Las Vegas to attend the McGregor v. Mayweather fight.  She did not mention Timlin's uncle.

36.     During the stop, Tinlin randomly blurted out that he had had 8 relatives die in the past couple of months.

37.     The Nebraska law enforcement officer knew from his training and experience that when drug couriers or couriers of drug money are confronted by law enforcement they bring up the subject of someone's death to try and elicit sympathy from law enforcement in an attempt to deflect the focus of the investigation, and to hopefully minimize suspicions.

38.     During the stop, Tinlin told the Nebraska law enforcement officer he and Osborn rented the car to drive back because they wanted to see parks in Colorado, including "Meade Lake."

39.     Lake Meade is South of Las Vegas, and not in Colorado.

40.     During the stop, Osborn told the Nebraska law enforcement officer he and Osborn rented the vehicle to see Colorado on the way back, but he could not recall a single sight they had seen along the trip back.

41.     The Nebraska law enforcement officer knew from his training and experience that drug couriers or drug money couriers often, when caught by law enforcement, have difficulty making their false stories make sense, or telling consistent stories with their travel companions, when questioned by law enforcement.

42.     The Nebraska law enforcement officer knew from his training and experience that drug couriers or drug money couriers often fly into locations to acquire the illegal items with which they are involved, and then drive rental cars to transport the illegal items elsewhere, because they know they are likely to get caught by airport security if they attempt to smuggle contraband or suspicious items onto an airplane.

43.     During the stop, Tinlin falsely told the Nebraska law enforcement officer that his only criminal history was for a domestic situation involving his ex-wife.

44.     A criminal background check during the stop informed the Nebraska law enforcement officer that Tinlin had numerous controlled substance arrests and convictions.

45.     At some point during the stop, the Nebraska law enforcement officer learned from the Des Moines police department that Tinlin and Osborn were under investigation for being methamphetamine dealers of quantities exceeding a pound, and had recently purchased numerous firearms.

46.     Tinlin and Osborn were, in fact, methamphetamine users and dealers at the time.

47.     Tinlin was unsure of many of the answers he provided to the Nebraska law enforcement officer.

48.     While waiting for background information to be reported back via radio on Tinlin and Osborn, the Nebraska law enforcement officer called for assistance by

a properly-trained drug detection dog, based on the totality of the things he had heard and seen.

49.    While the Nebraska law enforcement officer was still waiting for background information, and before he issued Tinlin a citation, the properly-trained drug detection dog lawfully alerted to the presence of one or more controlled substances inside the Cadillac.

50.    When Tinlin was told by the Nebraska law enforcement officer that the properly-trained drug detection had alerted to drugs and the vehicle was going to be searched, Tinlin falsely denied having drugs in the vehicle and aggressively told the officer that law enforcement was not going to search the Cadillac.

51.    As a reasonable measure to control the situation, Tinlin and Osborn were placed in handcuffs while the lawful search was conducted.

52.    Inside the trunk of the vehicle, Nebraska law enforcement found 10 packages of methamphetamine, weighing approximately 11.8 pounds.

53.    Other evidence, including four cashier's checks totaling $25,000, were found in the Cadillac.

54.    Hotel or motel documents seized from the Cadillac show Tinlin and Osborn had stayed in Nevada, California, and Utah during their trip between August 24 and August 28, 2017.  No hotel or motel receipts for Colorado were found in the vehicle.

55.     California is well-known as a source state from which drug-dealers commonly ship methamphetamine and other controlled substances to other parts of the United States.

56.     Shortly thereafter, the Nebraska law enforcement officer relayed what he had learned from the stop and search to law enforcement in Des Moines, Iowa.

57.     Later that day, a United States Magistrate in Des Moines approved a federal search warrant for Tinlin's and Osborn's residence, or 220 East Lally Street in Des Moines.

58.     At or about 5:05 p.m., that day, Des Moines-area law enforcement executed the federal search warrant at 220 East Lally Street, Des Moines, Iowa.

59.     The following items were located on the property of 220 East Lally Street:

Garage

- North end cabinet – Mail in the name of Douglas Tinlin addressed to 220 East Lally Street DSM

- In cabinet on north end – Clear baggie containing twenty two (22) alprazolam tablets

- North end – Four (4) working digital scales

- North end – Ruger .22 caliber rifle bearing serial #NRA205053

- North end – Revelation Western 310C 20 gauge shotgun

- North end – Ruger Model 10/22 rifle with magazine bearing serial #82404972

- North end – Stevens Savage Arms Model 87B rifle

- North end – New Haven Model 273A .410 gauge rifle

- North end – Marlins Firearms Company 60W .22 caliber rifle bearing serial #05237810

- North end – Beretta CX4 Storm .40 caliber rifle bearing serial #CY05697

- North end – Raven Arms .25 caliber handgun bearing serial #672894

- North end – On bench – Heat sealed package with residue that tested positive for the presence of methamphetamine

- North end – North cabinet – Plastic packaging

- North end – On top of tool bench – Black bag with magazines and miscellaneous ammunition

- North end – In wooden box – Clear baggie containing an estimated six grams (6g) of marijuana

- North end – In wooden box – Plastic packaging and methamphetamine pipe

- North end – In wooden box – Working digital scale and torn baggies

- North end – In wooden box – Miniature Ziploc baggie containing an estimated 0.1 grams of an unknown white substance

- North end – On north cabinet – Miscellaneous ammunition

- North end – Duffel bag with numerous Ziploc baggies

- North end – Three (3) bags of miscellaneous ammunition

- North end – On table along north wall – Box to stolen Taurus Revolver Model 85 bearing serial #VH34583

- North end – Along west wall – Bulk packaging that tested positive for the presence of methamphetamine

- North end – Inside wooden stove – Bulk packaging that tested positive for the presence of methamphetamine

- North end – Ceiling of garage – Marlin Firearms .22 caliber LR bearing serial #23551087

- North end – Ceiling of garage – Marlin Firearms .22 caliber LR bearing serial #71546796

- North end – Ceiling of garage – Marlin Firearms .22 caliber LR bearing serial #08340103

- North end – Ceiling of garage – Mossberg 20 gauge shotgun

- North end – Ceiling of garage – Revelation .22 caliber LR bearing serial #P994535

- North end – Ceiling of garage – Winchester 12 gauge shotgun bearing serial #382493

- North end – Ceiling of garage – Winchester Model 94 30/30 firearm

- North end – Ceiling of garage – Topper Model 158 12 gauge shotgun (broken down)

- North end –Ceiling of garage – Savage Arms 16 gauge shotgun

- North end – Ceiling of garage – Coast to Coast 20 gauge shotgun

- North end – Ceiling of garage – Mossberg 855 12 gauge shotgun

- North end – Ceiling of garage – Browning Arms 20 gauge shotgun bearing serial #04738PT162

- North end – Ceiling of garage – Winchester Model 370 .410 gauge shotgun

- North end – Ceiling of garage – Ruger 1022 .22 caliber rifle with magazines and serial #124-66913

- North end – Ceiling of garage – Bolt action rifle bearing serial #N3983

- North end – Ceiling of garage – Glenfield Model 60 Marlin Firearms .22 caliber rifle

- North end – Ceiling of garage – Marlin Firearms .22 caliber LR bearing serial #04526832

- North end – Ceiling of garage – Ruger Ranch .223 rifle bearing serial #19553002

- North end – Ceiling of garage – Two (2) bags of miscellaneous ammunition

- North end – Ceiling of garage – Bag of miscellaneous ammunition and magazines

- Inside metal box – Winchester bolt action rifle

- Inside metal box – Winchester Model 1400 20 gauge shotgun bearing serial #151471

- Inside metal box – New England Firearms 20 gauge shotgun bearing serial #377553

- Inside metal box – C36 SKS rifle bearing serial #21058069

- Inside metal box – Remington 870 12 gauge shotgun bearing serial #15741433M

- Inside metal box – Eagle Arms 20 gauge shotgun with no serial #

- Inside metal box – Pardner Model SBI .410 gauge shotgun

- Inside metal box – New England Firearms .410 gauge shotgun bearing serial #NP376218

- Inside metal box – Weatherby Centurion 12 gauge shotgun bearing serial #NA021444

- Inside metal box – Marlin Firearms 30/30

- Inside metal box – Remington 22 pump action bearing serial #28001

- Inside metal box – Ithaca Gun Company 20 gauge shotgun bearing serial #709511-2

- Inside metal box – Marlin Firearms Co. Model 80 rifle with no serial number

- Inside metal box – Harrington Richardson .410 gauge shotgun bearing serial #AY494019

- Inside metal box – Remington Sportsman 12 gauge shotgun bearing serial #3098298

- Inside metal box – Remington 870 shotgun bearing serial #C493158M

- Inside metal box – New England Firearms bearing serial #208611

- Inside metal box – Stevens Model 320 12 gauge shotgun bearing serial #134906Q

- Inside metal box – Stoeber Model 2000 bearing serial #740687 (no barrel)

- Inside metal box – Remington 721 bearing serial #256481

- Inside metal box – Harrington & Richardson shotgun

- Inside metal box – New Haven Firearms Co. shotgun bearing serial #5191

- Inside metal box – Stevens Model 320 Savage Arms bearing serial #1225898H

- Inside metal box – Paul Selsor shotgun (broken down) bearing serial #16710

- Inside metal box – Browning Lighting 12 gauge shotgun bearing serial #3077589

- Inside metal box – Stevens Model 520 shotgun

- On table behind TV – Cardboard container with two (2) packages of Visco fuse & five (5) twelve gauge shotgun rounds

- In cabinet – Suspected pipe bomb

Inside house - West bedroom on main floor – Osborn's Bedroom

- Inside bucket- case with working scale, pipe, baggie – clear baggie containing twenty (20) pink pills, clear baggie with an estimated 0.1 grams of marijuana and three (3) clear baggies containing an estimated 14g/2g/0.1g methamphetamine (+FT)

- Inside floor safe on east wall – $14,000.00 U.S. currency, wrapped in clear plastic

- Inside black backpack on floor – Miscellaneous ammunition

- Inside cabinet under closet – Miscellaneous firearm magazines

- Inside cabinet under closet – SNR .357 revolver bearing serial #161435017

- Inside brown bag – Miscellaneous .38 Special and 9mm ammunition

- Inside brown bag – Keltec CNC-P11 pistol bearing serial #AZB42

- On bed – Clear Ziploc baggies

- On bed – Paperwork in names of Dawn Osborn and Douglas Tinlin addressed to 220 East Lally Street Des Moines

- On bed – Several Working digital scales

- On floor – Inside black case – Ruger P92 DC 9mm pistol with one magazine bearing serial #30619071

- On floor – Ruger .22 caliber pistol with one (1) loaded magazine bearing serial #109348

- On floor – Smith & Wesson .38 Special pistol bearing serial #BRL7980

- On floor – Empty 9mm magazine

- On floor – Working digital drug scale

- In closet- In black case – Mauser K98 DOU rifle bearing serial #8489DWAA607

- Inside black bag – Century International Arms 7.62 X 39mm with magazine bearing serial #M92PV022991

- In black plastic case – Ruger GP 100 (357 Magnum revolver with ammunition) bearing serial #172-47127

- In black plastic case – Cobra FS380 .380 handgun bearing serial #FS101077

- Inside white bucket – Sig Sauer P250 with one (1) loaded magazine bearing serial #EAK147488 (Inside black metal safe box)

- Inside white bucket – Inside blue case – Thompson Auto Ordinance .45 caliber handgun with two (2) loaded magazines bearing serial #E02376

Living Room

- On TV stand along north wall – Mail in the name of Dawn Osborn addressed to 220 East Lally Street Des Moines

- On speaker next to TV stand – Mail in the name of Dawn Osborn, Douglas Tinlin and Dominic Tinlin addressed to 220 East Lally Street Des Moines

Inside house – North bedroom on main floor

- Inside closet – Charles Daly shotgun bearing serial #918525

- Inside closet – Mossberg & Sons Model 40 .22 caliber rifle

- Inside closet – Savage Model 112R rifle bearing serial #0054971

60.    The residence and property was in complete disarray, and it was unkempt throughout the house.

61.    An acquaintance of Tinlin's and Osborn's who arrived during the search of their residence, Subject # 1, was *Mirandized* and agreed to speak to law enforcement officers.

62.    Subject # 1 identified the residence as Tinlin's and Osborn's, and said they were supposed to be on their way home with a "whole bunch of dope," or methamphetamine, from California.

63.    Subject # 1 said Tinlin and Osborn had planned to fly into Las Vegas, drive to California to pick up drugs, and then drive back to Des Moines, Iowa.

64.    Inside the residence, law enforcement also discovered 18 diazepam pills, over 7 grams of marijuana, 22 alprazolam pills.

65.    The methamphetamine pipe, some of the baggies with controlled substance residue or controlled substances, and other items, are evidence that Tinlin and Osborn were drug users at the time.

66.    Other items of investigative interest were also obtained.

67.    The totality of the evidence set forth above, as well as evidence yet to be obtained, establishes Tinlin and Osborn were unlawful users of methamphetamine on or about August 29, 2017.

68.    As unlawful users of methamphetamine, Tinlin and Osborn were legally prohibited from possessing firearms and ammunition.

69.    Numerous items seized from the Cadillac and the residence of Tinlin and Osborn on August 29, 2017, establish they were illegally distributing controlled substances, such as methamphetamine, marijuana, diazepam, and alprazolam, to other people.

70.    Possession of large amounts of illegal drugs, such as the methamphetamine seized from the Cadillac, along with large amounts of cash, such as the $14,000 found in the residence, suspicious money orders generated in a short period of time, such as the four cashier's checks totaling $25,000 found in the Cadillac, equipment to measure and distribute drugs, such as the numerous digital scales found in the residence, paraphernalia used to aid in drug distribution, such as the plastic baggies found in the residence, and weapons used to protect the drug dealers and drug operation, such as the firearms and ammunition located in Tinlin's and

Osborn's residence, are all common indicia of drug trafficking, and were evidence of their drug-dealing in this case.

71.   The firearms and ammunition had been shipped and transported in interstate commerce.

72.   The firearms and ammunition seized are subject to forfeiture because they were illegally possessed by Tinlin and Osborn when they were unlawful users of, or addicted to, controlled substance.

73.   The money, firearms and ammunition, and assorted drug paraphernalia seized, including, but not limited to, the digital scales and drug pipe, are subject to forfeiture because they were proceeds of illegal drug trafficking under federal law, and/or were property used to facilitate such drug trafficking.

## V.   CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant Property be forfeited to the United States in this action and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:   */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Benjamin Carter, hereby verify and declare under penalty of perjury that I am a Narcotics Investigator with the Des Moines Police Department, Vice & Narcotics Control Section, and that I have read the foregoing Verified Complaint *in Rem, United States v. $14,000.00 in U.S. Currency et al.* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Narcotics Investigator with the Des Moines Police Department.

Dated:  February 26, 2020.

_____
Benjamin Carter, Narcotics Investigator
Des Moines Police Department